UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Robert S.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Martin O'Malley, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. 2:23-cv-01713-DJA<br><br>**Order** |

Before the Court is Plaintiff Robert S.'s brief moving for reversal and remand for further proceedings (ECF No. 16) and the Commissioner's cross-motion to affirm (ECF No. 17). Plaintiff filed a reply. (ECF No. 19). Because the Court finds that the administrative law judge ("ALJ") erred in not properly considering certain medical opinions of record, but did not err in not considering certain others, the Court grants in part and denies in part Plaintiff's motion to remand (ECF No. 16) and denies the Commissioner's cross-motion to affirm (ECF No. 17). The Court finds these matters properly resolved without a hearing. LR 78-1.

## BACKGROUND

**I.    Procedural history.**

Plaintiff filed an application for disability and disability insurance benefits on August 24, 2021, alleging disability commencing January 11, 2018. (ECF No. 16 at 3). The Commissioner denied the claim by initial determination on May 4, 2022. (*Id.*). Plaintiff requested reconsideration of the initial determination on May 25, 2022, which request the Commissioner denied on August 8, 2022. (*Id.*). Plaintiff requested a de novo hearing before an ALJ on August 23, 2022. (*Id.*). The ALJ issued a decision denying Plaintiff benefits on April 5, 2023. (*Id.*). The Appeals Council denied Plaintiff's request for review on August 24, 2023, making the ALJ's decision the final decision of the commissioner. (*Id.*).

**II.     The ALJ decision.**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. 416.1520(a). (AR 11). At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity for five months in 2019, but otherwise there has been a continuous 12-month period during which the Plaintiff did not engage in substantial gainful activity. (AR 12). At step two, the ALJ found that Plaintiff has the following severe impairments: seizure disorder; headaches; right rotator cuff disorder; right clavicle disorder; possible tear left knee; major depressive disorder; and neurodevelopmental disorder. (AR 12). At step three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 14-17). In making this finding, the ALJ considered Listings 1.15, 1.18, 11.02, 12.04, and 12.11. (AR 14-17).

At step four, the ALJ found that Plaintiff,

> has the residual functional capacity to perform light work as defined in 20 CFR 1567(b) except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He cannot climb ladders, ropes, scaffolds. He should avoid concentrated exposure to working at unprotected heights. He can occasionally push and pull with the right upper extremities; and occasionally reach overhead with the right upper extremity. He is further limited to simple tasks, non-public tasks.

(AR 17).

At step five, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 27). But the ALJ found that Plaintiff could perform occupations such as routing clerk, delivery marker, and bench assembler. (AR 29). Accordingly, the ALJ found that Plaintiff had not been disabled since January 11, 2018 through the date of the decision. (AR 29).

**STANDARD**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security

made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

## DISABILITY EVALUATION PROCESS

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must

demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id*. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b) and 404.1565.  If the individual has the RFC to perform her past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If she can do other work, then a finding of not disabled is made.  Although the individual generally

continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

## ANALYSIS AND FINDINGS.

**I.     Whether the ALJ properly evaluated the medical opinions of record.**

*A.     The parties' arguments.*

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of record because the ALJ did not consider certain portions of the medical opinions. (ECF No. 16 at 5-8). Plaintiff points out that the ALJ considered Drs. Michael D'Adamo, Cal VanderPlate, and Marcel Punton's "Paragraph B" criteria opinions for Listings 12.06 (Anxiety and Obsessive Compulsive Disorders) and 12.11 (Neurodevelopmental Disorder),[1] but did not consider the doctors' narrative explanations of those opinions. (*Id.*). Dr. D'Adamo explained his "Paragraph B" opinions by stating that Plaintiff is best equipped for simple directions and procedures, that he needs tasks which complete easily and quickly over two hour intervals, that he should not serve the public or coordinate much with others, and that he needs a predictable routine. (AR 90-93). Dr. VanderPlate explained his "Paragraph B" opinions by stating that Plaintiff is able to understand

---

[1] The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). For a claimant's disorders to meet or equal a Listing, the disorder must satisfy the "Paragraph A" criteria and either the "Paragraph B" or "Paragraph C" criteria. *See* Listing of Impairments 12.00(A)(2). The "Paragraph B" criteria are the functional criteria that the Social Security Administration will assess to evaluate how a claimant's mental disorder limits their functioning. *Id.* at 12.00(A)(2)(b). They include: (1) the ability to understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *See id.*

Dr. D'Adamo opined that Plaintiff was moderately limited in each criteria. (AR 90-93). Dr. VanderPlate opined that Plaintiff was moderately limited in the second and third criteria and mildly limited in the first and fourth. (AR 118-120). Dr. Punton opined that Plaintiff was moderately limited in each criteria. (AR 815-16). The ALJ found these opinions persuasive and concluded that Plaintiff was moderately limited in the first three criteria and mildly limited in the fourth. (AR 26).

and remember simple and detailed instructions; that Plaintiff can carry out simple and detailed instructions, can maintain attention and concentration for two hour periods, can perform activities within a schedule, can maintain attendance, and can sustain a routine without special supervision; that Plaintiff is capable of interacting infrequently with the general public and can relate adequately with coworkers and supervisors; and that Plaintiff can manage stress, adjust to a task setting and deal with normal changes; and that Plaintiff can deal with normal work hazards. (AR 120-121). Dr. Punton explained his "Paragraph B" opinions by stating that Plaintiff was unable to function in the open labor market. (AR 815). Plaintiff argues that, although the ALJ found the doctors' "Paragraph B" opinions to be persuasive and used them to create her "simple and non-public tasks" RFC limitation, the ALJ did not explain how she arrived at the RFC considering the fact that the ALJ did not address the doctors' narrative explanations for their "Paragraph B" opinions. (ECF No. 16 at 7). Plaintiff adds that the ALJ also failed to address the opinions of Dr. Robert Shorr and Mr. Mark Remas, who conducted evaluations in Plaintiff's underlying workers' compensation case. (*Id.* at 7-8). Plaintiff claims that Mr. Remas' opinion—evaluating Dr. Punton and Dr. Shorr's opinions and concluding that Plaintiff would not be amenable to vocational rehabilitation—is evidence that the ALJ's failure to fully consider the medical opinions was not harmless. (*Id.*). Plaintiff's reasoning appears to be that if Mr. Remas reviewed Dr. Punton and Dr. Shorr's opinions and concluded that Plaintiff was not amenable to vocational rehabilitation, then the ALJ, if she had properly considered both opinions, would have also concluded that Plaintiff is disabled.[2]

---

[2] Plaintiff also argues in a single paragraph that "[t]he ALJ also failed to properly take into account the impact of the moderate limitation in persistence and pace on [Plaintiff's] ability to perform work on a full time and consistent basis" and that the error was not harmless because "[t]he vocational expert stated that if an individual was off task in excess of 10% of the workday, this individual would not sustain work in the open market." (ECF No. 16 at 8). Plaintiff claims in conclusory fashion and with no support that, "[t]his limitation is consistent with a moderate limitation in persistence and pace." (*Id.*).

Defendant does not respond to this argument and Plaintiff does not provide any further argument in reply.

The Court only addresses well developed arguments. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013). But even if the Court were to address this argument, it

1    The Commissioner responds that the ALJ properly considered the medical opinions. (ECF No. 17 at 3-7). The Commissioner argues that the ALJ's assessment adequately captured Drs. D'Adamo and VanderPlate's opinions because the ALJ'S RFC is consistent with the restrictions they opined and nothing more was required of the ALJ than to translate Plaintiff's moderate mental impairments into specific functional limitations. (*Id.*). Regarding Dr. Punton's opinion that Plaintiff is unable to function on the open labor market, the Commissioner points out that not everything a doctor says qualifies as a medical opinion and that Dr. Punton's opinion on this issue does not. (*Id.*). Plaintiff argues that Dr. Punton's statement is more accurately a statement about whether Plaintiff is disabled or unable to work, which is a statement on an issue reserved for the Commissioner. (*Id.*). Regarding Dr. Schorr's opinion, the Commissioner argues that because Dr. Schorr simply summarized Dr. Punton's opinion and expressed his agreement with Dr. Punton's conclusions, the ALJ properly considered Dr. Shorr's opinion by considering Dr. Punton's opinion. (*Id.*). The Commissioner adds that the ALJ was under no obligation to discuss the non-medical opinion of Mr. Remas. (*Id.*). But even if the ALJ were, the Commissioner points out that Mr. Remas based his opinion on Plaintiff's self-report and the assessments from Drs. Punton and Schorr. (*Id.*). Because the ALJ separately found that Plaintiff's self-reports were not fully reliable, the Commissioner argues that the ALJ was free to disregard Mr. Remas' opinion. (*Id.*). The Commissioner adds again in conclusory fashion that the ALJ otherwise considered Drs. Punton and Shorr's opinions. (*Id.*). The Commissioner concludes that even if the ALJ's failure to consider Mr. Remas' opinion was in error, that error was harmless because more reliable medical evidence that the ALJ credited contradicts it. (*Id.*).

---

would fail because "Plaintiff offers no evidence, in the record or elsewhere, that he would be off-task for more than ten percent of an eight-hour workday on account of a moderate limitation in his ability to concentrate, persist, or maintain pace." *Hugo R. v. O'Malley*, No. 23-cv-1222-JES-LR, 2024 WL 3597111, at 14 (S.D. Cal. July 30, 2024). Moreover, it was Plaintiff's attorney—not the ALJ—to pose the ten-percent hypothetical to the vocational expert. (AR 64-65). And "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

Plaintiff replies that the ALJ was not permitted to simply ignore portions of Dr. Punton's report or the entirety of Dr. Schorr's and that the ALJ's boilerplate statement that she "did not provide any articulation about the evidence that is inherently neither valuable nor persuasive" is not sufficient. (ECF No. 19 at 3-5). Plaintiff adds that the Commissioner's arguments to the contrary are *post hoc* rationalizations about the ALJ's reasoning. (*Id.*). Plaintiff asserts that the Commissioner's argument that the ALJ was not required to analyze Mr. Remas' opinion and so the failure to do so was harmless is flawed. (*Id.*). Plaintiff explains that the unpublished Ninth Circuit case—*Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022)—to which the Commissioner cites for the proposition that the ALJ is no longer required to articulate his or her consideration of nonmedical evidence is "inconsistent with long-standing administrative law precedent." (*Id.*).

### B.     Analysis.

Under the applicable rules, the ALJ must "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions" by considering the medical opinions' supportability and consistency, the doctor's relationship with the claimant and specialization, and other factors. 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c). A "medical opinion" is defined under 20 CFR § 416.913(a)(2) as: "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities [listed in sub-paragraph (a)(2)(i) of the regulation]." With respect to mental health conditions, a medical opinion consists of: "impairment-related limitations and restrictions in: .... [y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting ...." 20 CFR § 416.913(a)(2)(i)(B). Under 20 CFR § 416.920(a)(3), the Commissioner "will consider all evidence in your case record when we make a determination or decision whether you are disabled." When considering severity of mental impairments, the Commissioner follows a technique described in 20 CFR § 416.920a.

When considering medical opinions, the ALJ is specifically required to consider the two most important factors, supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor involves consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the 2017 regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). On the other hand, an ALJ need not provide analysis if the evidence is "neither valuable nor persuasive to the issue," such as decisions by other governmental agencies and nongovernmental entities," and "statements on issues reserved to the Commissioner." *See* 20 C.F.R § 416.920b(c)(1)-(3).

        1.    <u>Whether the ALJ erred in not articulating her consideration of Drs. D'Adamo and VanderPlate's narrative explanations for their "Paragraph B" opinions.</u>

The Court finds that the ALJ erred by not articulating her consideration of Drs. D'Adamo and VanderPlate's narrative explanations for their "Paragraph B" opinions and that the error was not harmless. As a preliminary matter, neither party adequately briefed the question of whether an ALJ errs by not considering narrative explanations that physicians provide in support of their "Paragraph B" findings. Nonetheless, the Court finds that the ALJ did.

Both Dr. D'Adamo and Dr. VanderPlate completed Mental Residual Functional Capacity Assessment ("MRFCA") worksheets in providing their opinions regarding the "Paragraph B" criteria for Plaintiff. Those forms provide that "[t]he questions below help determine the individual's ability to perform sustained work activities. However, *the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)*, which describes how the evidence supports each conclusion." (AR 89, 117) (emphasis added). In addressing Drs. D'Adamo and VanderPlate's opinions, the ALJ did not explicitly address the doctors' narrative

explanations regarding their "Paragraph B" opinions. (AR 25). Instead, the ALJ only addressed the questions about Plaintiff's ability to perform sustained work activities. (AR 25).

This was in error because "when the ALJ gives substantial weight[3] to a medical opinion, the ALJ is required to incorporate into the ultimate RFC *only the narrative portion of the MRFCA*." *John G. v. Berryhill*, No. 3:17-cv-01076-AC, 2018 WL 3202000, at *6 (D. Or. June 28, 2018) (emphasis added) (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005-06 (9th Cir. 2015) and noting that in that case, the Ninth Circuit found that the ALJ did not err in omitting a supervisory limitation where a physician checked a relevant box in the MRFCA worksheet but did not include the limitations in the narrative functional capacity assessment). The requirement of the ALJ to address the narrative portions of the MRFCA is also included in the Programs Operations Manual System ("POMS"), an internal Social Security Administration document that does not have the force of law, but that the Ninth Circuit has recognized as persuasive authority. *Israel v. Astrue*, 494 Fed.Appx. 794, 797 n.1 (9th Cir. 2012). According to the POMS "**[i]t is the narrative** written by the [psychological consultant] **that adjudicators use as the assessment of MRFC.**" POMS DI 25020.010(B)(1) (emphasis in original). So, the Court finds that the ALJ erred by not considering the narratives that Drs. D'Adamo and VanderPlate provided in support of their "Paragraph B" criteria opinions.

The ALJ's error was not harmless. An error is harmless where it is nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, it appears that the error is relevant to the ALJ's ultimate disability conclusion because the only mental RFC limitation that the ALJ assessed was to limit Plaintiff to "simple tasks, non-public tasks." (AR 17). But the ALJ's RFC does not address Dr. D'Adamo's opined limitations that Plaintiff "needs tasks which complete easily and quickly over two hour intervals," and requires a "predictable routine." (AR 91, 93). Nor does it address Dr.

---

[3] *John G. v. Berryhill* applied the pre-2017 standard for analyzing medical opinions that provided great deference to treating or examining physicians. *John G.*, 2018 WL 3202000, at *3. While the ALJ applied the post-2017 standard here, the Court finds that the *John G.* court's analysis is still analogous because the ALJ found Drs. D'Adamo and VanderPlate's opinions persuasive.

VanderPlate's opinions that Plaintiff could only "maintain attention and concentration for two hour periods," and can only "perform activities within a schedule." (AR 121). This matters because the ALJ ultimately presented her RFC to the vocational expert, who determined that Plaintiff could perform certain jobs consistent with that RFC and was thus not disabled. The Court thus grants Plaintiff's motion for remand on this issue.

2. <u>Whether the ALJ erred in not considering Dr. Punton's opinion that Plaintiff is "unable to function in the open labor market."</u>

The Court finds that Dr. Punton's statement that Plaintiff is "unable to function in the open labor market" to be an opinion on an issue reserved for the Commissioner such that the ALJ did not err by not considering it. Under 20 C.F.R. § 404.1520b(c)(3), statements regarding whether a claimant is disabled, able to work, or able to perform regular or continuing work are the types of statements that are neither valuable nor persuasive and on which the Commissioner "will not provide an analysis." Dr. Punton's statement fits squarely within this category and Plaintiff offers no argument about why it does not. So, the Court finds that the ALJ did not err in not considering it.

3. <u>Whether the ALJ erred in not addressing Dr. Shorr's opinion.</u>

The Court finds that the ALJ erred in not addressing Dr. Shorr's opinion. Again, both parties provide little legal analysis to support their arguments. The Commissioner's argument is particularly lacking because the Commissioner simply states that, because the ALJ considered Dr. Punton's opinion, which opinion Dr. Shorr summarized and agreed with, the ALJ reasonably considered Dr. Shorr's opinion. (ECF No. 17 at 5). But the Commissioner provides no authority for this statement.

To the contrary, the regulations provide that ALJs "will articulate in [their] determination or decision how persuasive [they] find *all* of the medical opinions…" 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (emphasis added). To the extent that the Commissioner argues that the ALJ was free to disregard Dr. Shorr's opinion because Dr. Shorr made it in a workers' compensation proceeding, "the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the

terminology used in such proceedings." *Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002) (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)). "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (superseded on other grounds). "[T]he ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion." *Booth*, 181 F.Supp.2d at 1105-06 (collecting cases).

Here, the ALJ did not address Dr. Shorr's opinion at all other than citing to it at the end of a single sentence: "Because of the upper extremity symptoms, the claimant underwent EMG and nerve conduction studies on February 5, 2018 and this revealed a slight bilateral median sensory neuropathy distal to the wrist (16F/49)." (AR 21). Otherwise, the ALJ does not mention Dr. Shorr's opinion or cite to it. So, the Court finds that the ALJ erred. And because the ALJ did not even mention Dr. Shorr's opinion, the Court cannot confidently conclude that the error was harmless. *See Marsh v. Covin*, 792 F.3d 1170, 1173-74 (9th Cir. 2015). The Court thus grants Plaintiff's motion for remand on this issue.

    4.    <u>Whether the ALJ erred in not addressing Mr. Remas' opinion.</u>

The Court finds that the ALJ did not err in not addressing Mr. Remas' opinion. The Ninth Circuit has not decided in a published opinion whether an ALJ must discuss non-medical sources in their decisions under the new, 2017 regulations. But it has discussed the issue in a non-published decision. In *Fryer v. Kijakazi*, the Ninth circuit noted that "[i]t is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions." *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. 2022) (unpublished). In any event, however, Plaintiff asserts that the opinion the ALJ failed to consider was Mr. Remas' opinion that Plaintiff would be unable to compete for employment in the open labor market. (ECF No. 16 at 8). But the ALJ's failure to consider that opinion, even if it was in error, was harmless because that opinion is of the type reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3). As a result, Mr. Remas' opinion was neither valuable nor persuasive and the ALJ did not err in not addressing it.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 16) is **granted in part and denied in part.** It is granted in part regarding Plaintiff's request that the Court remand the case on the issues of the ALJ's failure to consider Drs. D'Adamo and VanderPlate's narrative explanations of the "Paragraph B" criteria and the ALJ's failure to consider Dr. Schorr's opinion. It is denied in all other respects.

**IT IS FURTHER ORDERED** that this case be **remanded** for further proceedings: (1) for the ALJ to articulate how she considered Drs. D'Adamo and VanderPlate's narrative explanations of the "Paragraph B" criteria; and (2) for the ALJ to articulate how she considered Dr. Shorr's opinion.

**IT IS FURTHER ORDERED** that the Commissioner's cross motion to affirm (ECF No. 17) is **denied**. The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: September 30, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE